## WILKIN AND OTHERS *against* WILKIN.

If a bill, besides the usual prayer for general relief, contains a prayer for *specific* relief, the plaintiff is entitled to other specific relief, so far as it is consistent with the case stated in the bill.

The court will not sustain a bill for a partition, where the title is denied, or is not clearly established; but the bill will be retained, to give the plaintiff an opportunity to establish his title at law.

THIS case arose on a *rehearing*, against a decree of the late Chancellor, dismissing the bill.

The bill stated, that the plaintiffs are the children and heirs at law of *William Wilkin*, deceased. *John Wilkin*, their grandfather, before the 29th of *July*, 1752, purchased of the Widow *Phillipse*, and her children, a lot of land, (now in *Orange* county,) of about 500 acres, paid part of the purchase money, and entered into possession, but had no deed. He owed *Jacobus Bruyn* 200 pounds. On the 29th of *July*, 1562, he made his will, and among other things, devised as follows: " I do give, devise, and bequeath, unto my four sons, by name, *John, George, Joseph,* and *Jason*, and to their heirs and assigns for ever, all that lot of 500 acres of land, or thereabouts, and the farm whereon I live, with the appurtenances, by me purchased of

Widow *Phillipse*, and her children, and for which I have no conveyance from them yet; the one half thereof to my said son *John*, his heirs and assigns, and the other half thereof unto my said three sons, *George, Joseph*, and *Jason*, their heirs and assigns; nevertheless, it is my will, and I do order and direct, that my said four sons, *John, George, Joseph*, and *Jason*, shall pay for the same, to *Jacobus Bruyn*, the sum of two hundred pounds, with interest, &c., the one half to be paid by my said son *John*, and the other half by my other three sons, *George, Joseph*, and *Jason*, *each one equal third part thereof.*"

The testator died in possession, soon after making his will, leaving *William Wilkin*, his eldest son and heir at law, father of the plaintiffs and *James Wilkin*, and the four younger sons above named. The remainder of the purchase money was paid by the executors to the Widow *Phillipse* and her children, who, on the 20th *March*, 1753, according to the desire expressed in the will, conveyed the premises to *Jacobus Bruyn*, in fee, *in trust* for the four younger sons above named, ón their paying the 200 pounds due him, &c. The *four* sons were in possession at the date of this deed, and continued in possession, occupying in common, for several years after. In 1764, the *four* sons, being in possession, made partition according to their rights under the will, and executed mutual releases; and, having paid to *Bruyn* the 200 pounds, &c., he, on the 8th of *July*, 1769, conveyed to them in fee, *to hold according to the will.*

*George*, one of the four sons, sold his share to one *Gillespie*, in fee. *John* and *Joseph* continued in possession until their deaths; but whether they and *Jason* (the defendant) occupied separately, according to the partition, or in common, the plaintiffs could not say. *Joseph* died in *October*, 1773, intestate, and without issue; and *John* died the 18th of *September*, 1775, intestate, and without issue. The eldest brother, *William*, father of the plaintiffs, died in *November*, 1787.

The plaintiffs claimed, under their father, the shares of *John* and *Joseph*, under the partition, alleging that the four brothers above named were seised in common, and that they are entitled to a *moiety*, and a *third of a moiety*, of the land. The defendant refused to let them into possession of their shares, &c. or to execute releases to them, pretending that the four brothers were joint tenants, and denying the partition. The plaintiffs commenced an action of ejectment, which was at issue ; but the will of their grandfather, the deed of the Widow *Phillipse* and her children, and the deed of *Bruyn*, and the evidence and releases respecting the partition, being in the possession, or control, or knowledge of the defendant, the plaintiffs could not proceed in the action at law, without the aid of this court, to compel a discovery and possession of the said deeds, and the execution of proper releases, &c. And the plaintiffs prayed for a discovery ; and that the possession of the deeds might be delivered to them ; and that proper conveyances might be executed by the defendant ; and that the plaintiffs might be relieved according to equity, and as the nature of the case might require, &c.

The defendant, in his answer, admitted many of the facts stated in the bill ; but he denied that any *partition* was ever made, or any releases executed in pursuance thereof, except it might be as to the share of *George*, sold to *Gillespie*. He stated that the brothers lived together, and that no act was done by them to sever the possession, and that they had not accounted together ; that the defendant and his brothers always considered the land as held in joint tenancy, and lived in uninterrupted harmony together ; that since the death of his brothers, he had considered the land as his own, and had made valuable improvements on it.

Several witnesses were examined on both sides, and their depositions read at the rehearing ; but it is deemed unnecessary to state the evidence.

Vol. I.                           P

1814.

WILKIN
v.
WILKIN.

*S. Jones*, jun., for the plaintiffs, contended ; 1. That the devise to the four sons constituted them tenants in common, and not joint tenants ; and that the shares of *John* and *Joseph* descended to the plaintiffs, as their heirs at law. Both courts of equity and law lean in favour of tenancies in common. (2 *Atk.* 55. 2 *Bl. Com.* 180. *Co. Litt.* 180. *a.* 190. *b.* 183. *b.* *Litt.* sect. 299. 1 *Salk.* 277.) In joint tenancy the interests of all the tenants must be *equal ;* if they are *unequal*, it is a tenancy in common. (*Cro. Eliz.* 33. *Co. Litt.* 193. *a.* *Com. Dig. Estate.* (K. 2.)

Here *John*, most clearly, had an undivided *moiety* of the whole. The other *moiety* was, also, held by the other three sons in common. The last clause in the will directs the three to pay the one half of the debt, which was the consideration, *each one equal third part thereof.* The payment being to be made by the owners, in distinct sums, and not in one aggregate sum, showed that they were tenants in common. (1 *Vern.* 353. 3 *Atk.* 372. 730. 734. 3 *P. Wms.* 158.)

2. The deed from *Bruyn*, of the 9th of *July*, 1769, gave the sons no other or different estate in the premises than they already had under the will of their father.

3. There is sufficient evidence to show a partition among the four brothers.

4. If there is not sufficient evidence, yet the court ought to have sustained the bill, and awarded a commission for partition. (*Amb.* 236. *Cooper's Equ. Pl.* 134, 135.)

Though there is no special prayer for a partition, yet, under the general prayer for relief, the plaintiff is entitled to any relief consistent with the allegations in the bill, equally as if it were particularly asked. (*Amb.* 236. 12 *Ves.* 48. 62, 63. 2 *Atk.* 3. 141. 13 *Ves.* 119, 120.)

A partition may be by *parol.* (*And.* 50. *Co. Litt.* 250. 1 *Lev.* 103. 6 *Co.* 12.)

*Harison*, contra, contended ; 1. That this was a joint tenan-

cy, at least, as to the moiety held by the three sons. If it were considered a tenancy in common, and one of the three sons had died under age, the estate would have gone to the heir at law, which would have been contrary to the evident intention of the will.

2. The three sons had a right to call on *Bruyn* to convey to them an estate, either in joint tenancy, or tenancy in common, as they might elect. If the deed gave a different estate from the will, it would prevail, and must be construed independently of the will. (4 *Cruise's Dig.* 457—459. tit. 32. ch. 24. s. 49, 50, 51.)

The *habendum* in the deed is, to hold according to the will; some doubt may, therefore, exist as to the true construction of the deed. The intention of the parties, so far as it may be collected from their declarations, was that it was an estate in joint tenancy.

3. The joint tenancy was never severed. There is no evidence of any partition. It is true that parol evidence of a partition is good, if the possessions of the parties have gone with the partition, and been held according to it. But that is not the case here: and a joint tenancy cannot be dissolved by parol. (*Co. Litt.* 187. *a*. 169. *a*.)

4. This is properly a bill for a discovery, to which the plaintiffs are entitled. But having obtained that discovery, they must go on to prosecute their suit at law. Under a prayer for general relief, they can obtain that relief only which is consistent with the *specific* relief asked. (2 *Atk.* 141. 3 *Atk.* 132. 2 *Ves.* 225. 1 *Ves.* jun. 426. 13 *Ves.* 114. 118. 2 *Atk.* 325.)

Where particular and general relief are prayed, the latter cannot be more extensive than the former, nor different in its nature.

5. It does not appear that the plaintiffs are the heirs of the person last seised; nor is there any allegation of a seisin in *William Wilkin*. The plaintiffs cannot entitle themselves to partition, until their title is clearly established,

and they ought to be sent to a court of law for that purpose. Parties in this court, as well as at law, must recover *secundum allegata et probata.*

If tenants in common are entitled to favour, yet their claim, in this instance, is destroyed by the great lapse of time. This is a strong additional reason why the parties should be left to their legal remedies. A court of law is the proper *forum* to try the facts, as to the partition and legal title, and whether the title is not barred by the statute of limitations.

*Riggs,* in reply, insisted, that the bill ought, at any rate, to be retained; the prayer for discovery was sufficient to prevent its being dismissed. Besides, if the bill was defective, the plaintiffs were entitled to have it amended. The bill ought to be supported as to the discovery, at least; and, as an ejectment is pending, the bill should be retained, until the trial at law had ascertained whether there ought to be a *partition.*

The *seisin* of one tenant in common is the seisin of all. There is no evidence of an *actual ouster;* nor of a *disseisin* of *William Wilkin,* the son of *John.* If any of the plaintiffs are entitled to relief, it is sufficient to sustain the bill.

THE CHANCELLOR. This was not strictly a bill for partition. It was a bill for discovery, and for carrying into execution a partition, charged to have been formerly made. The defendant denies the title of the plaintiffs, and denies the fact of any partition. The parties have taken testimony on this point, and the plaintiffs have failed in the proof of their allegation, that a partition was formerly made, and still more in the designation of the specific portions assigned to each of the brothers. There is no evidence on the point, on which the court can act. It is, then, contended, that the bill is to be sustained for the purpose of awarding a commission to *make partition,* and that, although the specific prayer, in the bill, is for the delivery of possession, and for

the execution of proper conveyances according to the partition charged, yet that, under the general prayer for relief, a partition *de novo* may be decreed. With respect to this point, I apprehend the rule to be, that though the bill contain, as usual, a prayer for general relief, and, also, a prayer for specific relief, that the plaintiffs may have other specific relief, *provided it be consistent with the case made by the bill.* This was the rule laid down by Lord *Erskine*, in *Hiern* v. *Mill*, (13 *Ves.* 110, 120.,) and it seems to be agreeable to the principle formerly assumed by Lord *Hardwicke.* (*Grimes* v. *French*, 2 *Atk.* 141. *Dormer* v. *Fortescue*, 3 *Atk.* 132.) There does not appear to be any objection, in this instance, to the application of the rule, on the ground of surprise or prejudice; for one object of the bill, and of the specific prayer, is partition, not, indeed, a partition entirely new, but the complete execution of the one alleged to exist already in some imperfect degree. If, therefore, there was no question about the plaintiffs' title, I think I should have no doubt about the propriety of awarding a partition; for it would then be a relief perfectly consistent with the case made. But the title of the plaintiffs is denied, and the bill states, that the plaintiffs had commenced an action of ejectment at law, which was then at issue. The jurisdiction of chancery, in awarding partition, is not only well established by a long series of decisions, which are noticed by Mr. *Hargrave*, (*N.* 23 to *Lib.* 3 *Co. Lit.*,) but it has been found, by experience, to be a jurisdiction of much public convenience. (*Calmady* v. *Calmady*, 2 *Ves.* jun. 570.) The court, however, does not sustain a bill of partition, unless the title be clear; and, in the case of *The Bishop of Ely* v. *Kenrick*, (*Bunb.* 322.,) the bill for partition was dismissed because the title was denied. In another case, (*Cartwright* v. *Pultney*, 2 *Atk.* 380.,) Lord *Hardwicke* observed, that where there were suspicious circumstances in the plaintiff's title, the court would leave him to law; and, from several cases, it appears to have been the course of the court, when the ques-

1814.

WILKIN
v.
WILKIN.

tion of title, on a bill for partition, was in issue, to give the plaintiff a reasonable opportunity to try his title at law, and, in the mean time, to preserve the bill. (*Bliman* v. *Brown*, 2 *Vern.* 232., and the observation of the Master of the Rolls, in *Parker* v. *Gerard*, *Amb.* 236.) This appears to me to be the most advisable course in the present case. The questions on the title of the plaintiffs, are strictly legal questions, as, whether the estate created by the will, and by the deed, was an estate in joint-tenancy, or in common, and whether the plaintiffs are heirs of the person last seized. It may, also, be made a question at law, as has been suggested, whether the defendant be not protected from the claim by the statute of limitations ; this last consideration renders it still more proper that the plaintiffs should first be required to establish their title at law, before they come here for a partition. I shall, therefore, alter the decree heretofore made, for dismissing the bill with costs, and shall retain the bill, and leave the cause open until after the next circuit court, to be appointed and held in the county of *Orange*, when either party will be at liberty to move in the cause for such further order or decree as the case may require ; and all further questions are, in the mean time, reserved. A similar course was pursued in a case mentioned in *note* 1. to *Goodright* v. *Wells*, (*Doug.* 773.,) where the Master of the Rolls would not decide the legal question, but retained the bill for a twelvemonth, to enable the plaintiff, in the mean time, to assert his right at law.

Rule accordingly.