Van Riper v. Berdan.

order, then to dismiss the writ for want of due diligence in its prosecution.

*W. Pennington,* contra.

## URIAH VAN RIPER vs. ALFRED BERDAN.

The justice or judges ought to require the applicant for a partition of lands under the act, *Rev. Laws* 89, to lay before him or them, such documentary and other evidence, as at least *prima facie* to establish the fact of a co-tenancy. Unless that is done, no nomination ought to be made; and if on the day fixed for appointing the commissioners, or at any time before the commissioners are appointed, objections are made, and it should appear, that there is an adverse possession to the applicant, or a real dispute about his title to an undivided part of the premises, no appointment should be made, or partition ordered; but the application should be dismissed, and the parties left to their legal remedies.

If by the death, resignation or removal of one or more of the judges, since the appointment of the commissioners, and if in consequence of that, it becomes necessary to associate others to act with the remaining, the reason of such change, ought to appear on the proceedings, either in the report made by the commissioners, or by the order directing the same to be recorded. The order for recording the proceedings, is the life giving act to the partition, and ought to be made, and to appear to have been so by the officers pointed out by the statute.

When application is made to three judges, for the partition of lands, they are to ascertain the number of shares, to nominate commissioners, to make an order directing an advertisement thereof, to appoint the commissioners, to order the proceedings to be recorded, and if done by a less number than three, the proceedings will be erroneous.

Van Riper *v.* Berdan.

The legislature intended to give power by the act, *Rev. Laws* 89, to set off shares by metes and bounds, and the judges or commissioners cannot exercise jurisdiction or hold plea of any other subject than the fixing of lines for partition. No power is given to them by the act beyond this; it is the delegation of a special authority, that must be taken strictly, and cannot be enlarged by construction or extended over any other subject.

This was a certiorari directed to the clerk of the county of Bergen, removing into this court proceedings in a matter of partition. The facts are stated in the opinion of the court. The cause was argued at the last term by *E. B. D. Ogden* and *P. Dickerson* for plaintiff in certiorari

*A. S. Pennington*, contra.

HORNBLOWER, C. J. Several reasons were assigned and urged on the argument of this case, in support of the motion to quash and set aside the entire proceedings of the judges and commissioners in the matter of partition, brought up on this certiorari. It will not be necessary to notice more than one or two of the objections.

On the day designated by the judges for appointing commissioners, Van Riper appeared before the judges, and protested against any partition, and insisted that Berdan and himself were not tenants in common, or co-tenants of any kind, but that he was the sole owner in severalty of the whole premises. The judges however, overruled his objection, and appointed commissioners.

It was insisted by the counsel for the plaintiff, that if the fact of a co-tenancy is denied by any person claiming an estate or interest in the premises, it puts an end to the jurisdiction or authority of the appointing power, and no partition can be made. If this position is true, in the broad and unqualified terms in which it was urged before the court, it would put it in the power of any troublesome co-tenant, or even of a stranger without shadow of title, to defeat a partition under the statute, and render the act vain and nugatory. On the other hand, to give such a construction to the statute as would make it the duty of the justice or judges to appoint commissioners and direct a partition upon every application, regardless of the rights of others, would be dangerous in the extreme. Even if it could .

not affect their paramount title, it might subject them to great inconvenience and expense. The powers and duties of the justice or judges under the act in question are, I think, plain. It is an act for the partition of lands; but of what lands? Of such and such only as are held by coparceners, joint tenants, or tenants in common. The justice or judges must then be satisfied that such co-tenancy exists, before he can make any nomination of commissioners—not only so, but he must proceed to ascertain and determine the number of equal shares in which the premises are held by such co-tenants; and how can he do this, without first ascertaining the fact of a co-tenancy? But at this point, the question arises, how is that fact to be ascertained, and to what extent is the inquiry to be carried? The act evidently contemplates, that the application is an *ex parte* proceeding. The justice or judges ought then to require the applicant to lay before him or them such documentary and other evidence, as at least *prima facie*, to establish the fact of a co-tenancy; unless that is done, no nomination ought to be made; and if on the day fixed for appointing the commissioners, or at any time before the commissioners are appointed, objections are made, and it should appear that there is an adverse possession to the applicant, or a real dispute about his title to an undivided part of the premises, no appointment should be made or partition ordered; but the application should be dismissed, and the parties left to their legal remedies. I am aware, that proceeding even upon these principles, partitions may sometimes be ordered and made between persons having no title; but the statute saves the rights of all persons claiming under a paramount title.

In the case before the court there was a dispute—Van Riper denied the right of Berdan and claimed the whole premises; Enough I think, appeared before the judges, to shew that the parties claimed adversely. It was not a case of admitted or undisputed tenancy in common, and it was not therefore a case for a partition under the act.

But secondly, By the eighth section of the act under which these proceedings were instituted, *Rev. Laws* 92, the commissioners are directed to transmit the writing containing their appointment, and their oath or affirmation of office, properly certified by the person administering the same, and the map and

Van Riper *v.* Berdan.

field book, and also their accounts, to the justice or judges, from whom they received their appointment, *or* in case of their death, resignation, or removal, *then* to any other justice or judges of the same court; *who*, after inspecting the same, shall order the said instruments, excepting the account of expenses, to be recorded in the clerk's office of the Supreme Court, or in the clerk's office of the county in which the lands lie; which shall be good evidence of such partition.

Upon inspecting the record, it appears that the commissioners were appointed by Henry B. Hagerman, Garret Ackerson and Albert G. Doremus, three of the judges of the Common Pleas of the county of Bergen, on the twelfth November, 1831. On the 17th of November, 1831, they were sworn according to law, before a justice of the peace, and proceeded to execute the duties assigned to them. On the twenty-first January, 1832, they completed the partition and allotment; and from that time, nothing appears by the record, to have been done by the commissioners, until the 29th December, 1832, (more than eleven months after they had finished the partition;) when they transmitted their proceedings to Garret Ackerson, Peregrine Sandford and Charles Kinsey, esquires, three of the judges of the Common Pleas of Bergen, two of whom, however, viz., Sandford and Kinsey, were not the judges from whom the commissioners received their appointment.

Why nothing was done by the commissioners from the time they made the allotment on the twenty-first of January, 1832, until the twenty-ninth of December following, when they transmitted their proceedings to the three judges last named; and why they did not transmit them to the judges from whom they received their appointment, as the law directs, does not appear on the record.

If the two other judges had died, resigned, or removed, since making the appointment, and if in consequence of that, it was necessary to associate two other judges to act with the remaining one, the reason for such change, ought to appear on the proceedings, either in the report made by the commissioners, or by the order of the judges, directing the same to be recorded. For all that appears on the face of the proceedings, the other two judges were living, and in office on the twenty ninth of De-

cember, 1832; and if so, the papers ought to have been transmitted to them, and subjected to their inspection and judgment. The proceedings then, upon the face of them, have not been according to the statute, and must be set aside as erroneous. It is an important departure from the provisions of the act; to establish a partition under such circumstances, might open a door to fraudulent practices. The order for recording the proceedings, is the life giving act to the partition, and ought to be made and to appear to have been so, by the officers pointed out by the statute.

But it is said, that in this case, two of the judges were out of commission when the order for recording was made. Admitting the fact to be so, yet it is questionable whether that is an event which will authorize a resort to other judges. It is only in case of death, resignation or removal, that other judges may be called in. It seems to be a *casus omissus*. But I give no opinion on that point.

Thirdly. It is a fatal objection, I think, that the order approving of, and directing the proceeding to be recorded, is made by only two judges. If it was lawful for the commissioners to transmit their proceedings to these three judges, they ought all to have united in the order. The judges, in performing the duties required of them by this statute, do not act in the capacity of a court; but as special functionaries for this purpose, selected by their name of office. The act does not say that a majority of the judges may order the proceedings to be recorded. It requires the concurrence of all three; when application is made to three judges, for the nomination of commissioners to make partition, a nomination made by two of them only, and an advertisement in pursuance of such nomination, would not be sufficient. Three judges are to ascertain the number of shares, to nominate commissioners, to make an order directing an advertisement thereof, to appoint the commissioners, to order the proceedings to be recorded; and if done by a less number than three, the proceedings will be erroneous.

But upon looking into the depositions of the three judges, who made the appointment, it appears that the commissioners did regularly transmit their proceedings to them in January or March, 1832—that they heard the parties by their counsel, and

afterwards conferred together on the subject. Judge Hageman testifies, that he was of opinion, the proceedings were all wrong, and considered the matter at an end. Judge Doremus, says, that after the argument, the judges deliberated together, and the conclusion upon the whole was, not to make any order for the papers to be recorded. He says, that each of the judges might have had different reasons for coming to this decision; for himself, he thought it expedient to await the result of an action of ejectment, between the parties, for the purpose of trying Van Riper's title to the whole premises. Judge Doremus, on his cross examination, says, that he came to the conclusion, that they had no authority to proceed any further, as the matter then was, until the title was tried. All agree that they came to a determination to make no order. Nor was any authority or direction given for the return of the papers to the commissioners.

We have, then, a case in which the legally constituted tribunal, the three judges who appointed the commissioners, after inspecting their return, hearing argument and deliberating on the matter, decided not to order the proceedings to be recorded; and several months afterwards, when two of these judges are out of commission, the commissioners transmit the same papers to a new set of judges, with the exception of one, and an order is made by two of them, approving of the partition, and directing it to be recorded.

This proceeding cannot be supported; and the history of it as collected from the depositions, shews the propriety, when new judges are called upon to act, of requiring it to appear on the record, why the report was not submitted to the judges who made the appointment.

My opinion is, that the order approving of the partition, and ordering the proceedings to be recorded, as well as the one ascertaining the expenses and apportioning them between the parties, be vacated and set aside, and for nothing holden.

FORD, J. Alfred Berdan, claiming to own a tract of land as tenant in common with Uriah Van Riper, petitioned three judges of the Common Pleas of Bergen county, to appoint commissioners to divide it between him and Van Riper, according

to the statute. Van Riper attended on the judges, at the time and place advertised for naming commissioners, and denied that Berdan had any right or title to the land, or any interest in it. The judges thereupon examined the documents and evidence of Berdan's title, and being of opinion that he had good title to a part of the land, appointed commissioners to divide it between them. The commissioners went on, and after making the partition, transmitted it to the three judges from whom they had received their appointment, as directed in the eighth section of the act. The judges now entertaining doubts of the jurisdiction they had exercised, in trying and deciding on the title of Mr. Berdan, would not order the partition to be recorded; but suspended it till Mr. Berdan should establish his title at law. He accordingly brought an ejectment, and in the course of a year, recovered a verdict for a share of the land, and got into possession. His adversary, conceiving the pretence of title had not been duly resisted and investigated, brought a new ejectment against Van Riper; who not wishing to be longer delayed in the partition, and having once established his title, applied for an order to have it recorded; when he found that the commissions of two of the three judges, had expired and had not then been renewed. He then got the papers and presented them to *two other* judges, and by the order of two of them, they were recorded. Mr. Van Riper, thereupon, has the proceeding removed into this court, and by his counsel, takes two exceptions to them; first, that the judges had no power to appoint commissioners under this statute, to divide a portion of the land to a person whose right to any part was denied by the other part owners, until that right was duly established at law; secondly, if they had such power, that the final order for recording the return of the commissioners, was not duly made.

I consider the first objection to these proceedings as fatal to them. The legislature intended to give power by this act, to set off shares by metes and bounds; and the judges or commissioners cannot exercise jurisdiction, or hold plea of any other subject than the fixing of lines for partition. No power is given to them in any section of the act, beyond this; it is the delegation of a special authority that must be taken strictly, and cannot be enlarged by construction, or extended over any other

Van Riper *v.* Berdan.

subject. This principle was clearly settled in 3 *Halst.* 50, *The State* v. *Rickey.* A tract of land descended to certain children, as tenants in common, and its partition was petitioned for, to a judge of the Supreme Court, by some of the heirs. But a dispute arose concerning the existence, quantity, and value, of advancements, said to be made to some of the children by the ancestor in his life time. The opinion of respectable counsel, that the commissioners, in making partition, might inquire into these alleged advancements, and allow for them if true, was so strongly urged on the judge, as induced him to appoint commissioners, as the only means of bringing up the question. But the court was unanimously of opinion, that no jurisdiction was given to the judge or commissioners to try the dispute concerning advancements, and therefore, that no partition could be made under this statute.

The case now under consideration, raised a question before the judges, whether Mr. Berdan had any right or interest in the land, and it required a trial and decision on his title, before partition could possibly be made. It was a matter of a different nature, altogether distinct from it. Yet three judges tried this title, and directed the commissioners to allot a share to Mr. Berdan. It is impossible to believe that a simple act for making partition only, was to take the place of an ejectment; that it was to give to an applicant, his own choice of judges, for deciding on a title to land in dispute between him and his adversary, and they to have the power of decision without pleadings or issue, without notice of trial, or subpœna, or jury; not even to make up any record of their verdict; and that their decision should be absolutely conclusive. A partition under this act, will not conclude the title of strangers, but it becomes as valid between *the parties to it,* by the eighth section, as if it was made in a court of justice by *writ of partition.*

The power thus exercised over the title of the land, without the intervention of a jury, exceeds the powers of the chancellor, and even of the Supreme Court. Courts of equity have entertained suits for partition, ever since the time of Queen Elizabeth, 2 *Cruise,* 533, *section* 38; "but where there are suspicious circumstances in the plaintiff's *title,* they will leave him to law." *Id. sec.* 40, *Cartright* v. *Pultney,* 2 *Atk.* 380. Even the

chancellor will not undertake to decide on the title himself, but will send it to law, to be determined by a jury. In the case of *Wilkin* v. *Wilkin*, 1 *Johns. Ch. Rep.* 117, Chancellor Kent said, " If there were no question about the plaintiff's *title*, I think I should have no doubt about the propriety of awarding a *partition;* but the title of the plaintiff is *denied.*" And he refused to proceed till the plaintiff's share in the land should be settled by an action of ejectment. In the fourth volume of his *Com.* 360, he says, " The jurisdiction of Chancery in awarding partition, is well established, and has been found to be of great public convenience; but a court of equity does not interfere unless the title be clear, and never where the title is *denied*, or *suspicious*, until the party seeking partition has had an opportunity to try his title at *law.*" Thus the chancellor disclaims the power that was exercised by the three judges, and leaves the title to a jury. So upon a writ of partition in the Supreme Court, if the title of the plaintiff applying for it, is *denied,* it is never decided by the judges, it is submitted to a jury, and must be found by them to be in the plaintiff, before he can obtain judgment for a partition. The good sense of the three judges convinced them at length, that they had no right, under this statute, to try the title themselves, and led them to suspend the recording of the partition till after it should be decided in the ejectment at law. But they had already gone too far in appointing commissioners before it was known that the petitioner had any interest in the land. Suppose the jury had found that there was no title in him, what would have become of the commission thus prematurely awarded, and the expenses under it? There can be no order for partition in any case or any court, if the petitioner's title is denied and disputed, until it is legally established. The commission was therefore issued prematurely, upon a trial of title before the judges who had no jurisdiction over it ; and without bestowing time on the second objection, I am led by the first one to say, that it was illegal and irregular, and that the partition made under it must be set aside. I concur in the opinion on the other points now delivered by the chief justice.

DRAKE, J. delivered no opinion, as he had been prevented by sickness from hearing the argument.

Proceedings set aside.