PRICE          .

*v.*

TRUSDELL.

1. If, by a contract not under seal, one person makes a promise to another for the benefit of a third, such third person may maintain an action on it, though the consideration did not move from him.

2. A promise by a defendant to apply a debtor's funds, received or to be received, to the payment of a particular debt, is not a promise to answer for the debt of another person.

3. Where the drawer of a promissory note provides the second endorser with funds to pay the note, a trust is created in favor of the first endorser, as well as the holder, to have the fund applied in payment of the note.

4. A surety or creditor has a right to have any collaterals the debtor may have pledged to either for the payment of their debt, at any point in the transaction, applied to the payment of the debt.

5. Where two persons successively endorse a promissory note for the accommodation of the drawer, and the drawer provides the second endorser, at the time of his endorsement, with the means to pay the note, without the knowledge of the first, the drawer and second endorser have a right to subsequently agree that the means shall be appropriated to another purpose; but if the second endorser promises the first that the means provided by the debtor shall be applied to the payment of the note, and thereby lures him into inaction which results to his injury, such promise creates an equity in favor of the first which will support an action.

On final hearing on pleadings and proofs.

Price v. Trusdell.

*Mr. John Whitehead* and *Mr. A. Q. Keasbey*, for complainant.

*Mr. Thomas N. McCarter* and *Mr. John R. Emery*, for defendant.

THE VICE-CHANCELLOR.

The object of this suit is to compel the defendant to perform a promise alleged to have been made by him, to one Samuel Barber, for the benefit of the complainant. The parties became the sureties of Barber for the fulfillment of a contract made by him with the city of Newark, July 9, 1872, for paving part of Broad street. On the 24th of the same month, Barber applied to the defendant to raise $25,000 for him, on three notes, all drawn by himself, two of $8,000 each, and one of $9,000, and endorsed by both the complainant and the defendant. As between themselves, the defendant was first liable on the two of $8,000 each, and the complainant on that of $9,000. Two other persons had endorsed all three prior to either complainant or defendant. All were accommodation endorsers. The defendant raised the money on the three notes. Before it was passed over, Barber executed two orders, one on the treasurer and the other on the auditor of the city, directing the payment to the defendant of all the moneys earned under the contract. Over $85,000 have been paid to the defendant upon these orders, by the city, at different times. Barber failing to pay the $9,000 note, after several renewals, the complainant was compelled to take it up. The bill avers that Barber's purpose in making the orders, and the defendant's in accepting them, was to secure the application of the money received upon them to the payment of all three of the notes. This averment is fully supported by Barber's testimony. He swears it was distinctly agreed between the defendant and himself, when the orders were given, that the money received under them should be applied by the defendant to the payment of the three notes. The orders simply author-

ized the defendant to receive and receipt for the money; they did not, by express words, change the title to the money, nor direct its disposition. The defendant denies that a promise in form was made, but says, when Barber applied to him to raise the $25,000, he declined, stating that he already owed him a large amount, and that he was unwilling to make a further loan; that Barber then proposed to assign the contract, and that it was thereupon agreed that Barber should assign the contract to him for all he was then liable to him for, and he would then raise the money on the two $8,000 notes; that Barber then went away, taking the three notes with him, and on his return produced the $9,000 note endorsed by the complainant, and requested him to get the money on that as well as the others, and he did so. The defendant further says the orders were given pursuant to this agreement, and that he did not promise, nor was it proposed, that any part of the money received under the orders should be applied to the payment of the $9,000 note. It is not shown that any further agreement was made by Barber and the defendant respecting the moneys, until after June 7, 1873. Some time after this date—the exact time is not shown—Barber made an absolute assignment of the moneys to the defendant, post-dated June 7, 1873.

There can be no doubt, if upon the evidence it is found as a fact that the defendant received the orders upon his promise to apply the moneys received upon them to the payment of the $9,000 note, and that such promise remained in force when this suit was brought, the complainant has a right to relief. The doctrine is settled in this state, that if, by a contract not under seal, one person makes a promise to another for the benefit of a third, the third may maintain an action on it though the consideration did not move from him. *Joslin* v. *N. J. Car Spring Co.* 7 *Vr.* 141. And where the consideration of such promise springs out of a new transaction, or moves to the party promising, upon some fresh and substantive concern to himself, the promise is not

Price *v.* Trusdell. ·

within the statute of frauds, and will be valid, though verbal. *Hetfield* v. *Dow*, 3 *Dutch.* 440. Mr. Browne, in his treatise on the statute of frauds, says: " It is obvious that an engagement in terms to apply the debtor's own funds, received or to be received by the defendant, to the payment of a demand against him, creates a duty · as agent rather than as surety; the defendant's promise is not to pay the debt, but merely to deliver certain property to the nominee of the original debtor, and the right of such nominee against the defendant for a breach of his promise is not at all affected by the statute of frauds." *Browne on Frauds*, § 187.

Legal rules clearly entitle the complainant to relief, if he is right in his facts. The test question is one of fact: Were the orders made and accepted upon the promise stated in the bill and sworn to by Barber, and did it remain in force at the commencement of this suit? The evidence on the first branch of this question is not as conflicting as counsel seemed to regard it on the argument. Barber swears the orders were given upon an express promise by the defendant that all three of the notes should be paid out of the money received upon them, while the defendant, on his direct examination, says he agreed to raise the money on the two $8,000 notes on condition that Barber assigned the contract to secure the debt he then owed him, and on his cross-examination he says he consented to take the three notes provided Barber would assign the contract to secure what he then owed him, and also all future liabilities. The only possible distinction which can be drawn between the two statements is this: According to Barber's statement, the defendant made an absolute promise to pay the notes out of the money received upon the orders; while according to the defendant's, it may be said he understood the money was assigned to him to pay the debt then due to him, and also to indemnify him against the contingent liability he had incurred as endorser of the three notes. At the time the orders were delivered, the defendant had already endorsed the three notes, or did so immediately afterward, and passed

them away.   Barber was liable to the defendant upon all of them.   Whether the contract is stated in the one form or the other, one thing is clear, the defendant, as the arrangement then stood, was bound to pay the notes out of the moneys received upon the orders.   No future advances of either money or credit, up to that time, had been solicited or promised, and if none had been made, and no change had been made in the contract, it is hardly possible that a. question could have been raised as to the defendant's liability.   The orders put the money under the defendant's control, to provide him with the means to pay the notes, and, when received, he was bound to apply it to the purpose for which it was placed at his disposal.   By placing the money under his control to pay this debt, a trust was created in favor of Barber's creditor and his sureties to have the money applied to its payment.   In the language of Chancellor Kent, in a case in many respects identical with the one in hand:  " These collateral securities are, in fact, trusts created for the better protection of the debt, and it is the duty of the court to see that they fulfill the design.   And whether the plaintiffs were apprised, at the time, of the creation of this security, is not material.   The trust was created for their benefit, or for the better security of their debt, and when it came to their knowledge they were entitled to affirm the trust and enforce its performance." *Moses* v. *Murgatroyd,* 1 *Johns. Ch.* 118.   The rights of a creditor and a person occupying the position of a surety, whether technically surety, or endorser, or guarantor, in respect to property pledged by a debtor for the payment of his debt, are reciprocal ;  the creditor may claim the benefit of the collaterals held by the surety, and the surety may likewise claim the benefit of the collaterals held by the creditor.   The obvious design of the law, in both cases, is to satisfy the debt out of such property of the actual debtor as he may have pledged, at any point in the transaction, as security for the debt, and thus relieve from loss those who may have become bound for the debt as a mere favor to

the debtor. Nobody will dispute its justice. The real debtor, the person who in conscience was bound to pay this debt, has provided the defendant with the money to pay it; he has received the money; it is not pretended he has not received a sum sufficient to pay the debt. Barber owed him when the orders were given, and also the three notes; it would seem, therefore, to be a matter of simple justice that he should be required to pay the debt.

But, it may very properly be said, the complainant, so far as his title to relief has yet been considered, stands in Barber's right and upon his contract, and that the defendant and Barber having, by a subsequent agreement, appropriated the money to the security of a debt subsequently contracted by Barber to the defendant, the complainant is seeking to enforce a contract which has been abrogated by the parties to it, and he is, therefore, without a "legal existing stipulation" to support his action. This view has the support of authority. *Crowell* v. *Hospital of St. Barnabas,* 12 *C. E. Gr.* 650; 1 *Lead. Cas. Eq.* (*4th Am. ed.*) 175. But, it is also true, a new and independent equity could have been created by the promise of the defendant, or arisen out of his conduct, upon which the complainant may stand in his own right. Mr. Spence, in speaking on this subject, says: "If, by reason of the expectations held out to a stranger to the contract, under the contract, his condition in life has been changed, to the knowledge and by the instrumentality of the parties, then the stipulation for his benefit may be enforced by such stranger," not in virtue, however, of its original efficacy, but upon a new equity arising in favor of the stranger. 2 *Spence's Eq. Jur.* 281. If, while the original arrangement was in force, or perhaps even subsequently, the defendant promised the complainant, if he would wait until a subsequent or the final payment was made, he would pay the $9,000, the promise created a new and substantial equity in favor of the complainant which no subsequent contract between the defendant and Barber could extinguish. The law will not permit the defendant to lure the complainant

into inaction, and thereby get him to give up the benefit of a security within his reach, by promising to pay the debt at a future time out of other moneys of the debtor under his control, and then, when the complainant, after having waiting as requested, asks him to keep his promise, to turn upon him and mockingly say: " The money has been applied to debts subsequently incurred by the debtor to me, and I have none for you." The complainant testifies, within two months after the orders were given he found fault with the defendant for taking an assignment, which, as he expressed it, left him out in the cold; that the defendant replied, "Give yourself no uneasiness, the notes will be paid," and then promised to give him a writing, after the first note was paid, putting them on an equality under the assignment. His son-in-law also testified that in June, 1873, the defendant requested him to say to the complainant he need not commence legal proceedings against him; if he would hold on, he should have his money for the $9,000 note out of the final payment, and, in a subsequent conversation, the defendant requested him to tell the complainant he need not fret about his money; he would see it paid; there was money enough; and it is also shown, the defendant told one of the complainant's counsel, while he was endeavoring to constrain him to pay one of the $8,000 notes, which had been renewed in the defendant's absence, upon the complainant's endorsement alone, and the defendant thereby relieved from liability, that in all probability the $9,000 note would be paid out of the last payment, he had no doubt about the complainant's getting his money. Against this testimony the defendant brings nothing but his own oath. The weight of the evidence, in my judgment, is decidedly against him. He had control of every penny to be earned under the contract; he has not shown he advanced a single dollar to Barber, on the security of the orders, after he passed over the proceeds of the three notes and before these promises were made; and having no reason to doubt that the $9,000 had been used to complete the work under the paving con-

tract, it was reasonable, nay, just, he should make the promises the witnesses swear he did. The proofs convince my judgment that the defendant promised the complainant, if he would wait until the final payment, he would pay his claim. The complainant is, therefore, entitled to recover of the defendant the $9,000, with interest from the time he paid it, and also costs. I will so advise.