## McClaskey *et al. v.* Barr *et al.*

(*Circuit Court, S. D. Ohio, W. D.* April 26, 1890.)

1. Adverse Possession—Life-Estate—Partition.

   A tenant for life under a will made a deed purporting to convey the fee to the defendants' grantors, who during her life bought some of the interests in the remainder. At her death, in 1860, this had vested in the testator's brothers and sisters and their heirs, and since then the defendants and their grantors have been in exclusive possession, and made permanent and costly improvements, which the answer alleges to have been "in good faith, and without notice of the claims of the complainants or their ancestors." In 1858 the grantors of the defendants filed a petition stating that the tenant for life had conveyed to them all her interest, "being a life-estate," and that it was necessary to perpetuate testimony to prove the names of the brothers and sisters and their heirs. In an ejectment by one of these, soon after the death of the life-tenant, the defendants' grantors joined in an agreed statement of facts, setting out that proceeding, and the names of the brothers and sisters and some of the children. After final judgment for the plaintiff in that action, they authorized trustees to buy in for them the outstanding title of three children of one of the brothers, which was done, and afterwards the interests of other heirs were also bought in. This is stated by the defendants to have been by way of compromise and buying the peace. In one of the deeds taken by the trustees, the number of the brothers and sisters, and their having the estate in remainder at the death of the life-tenant, are recited. *Held,* on a bill for partition by the complainants as heirs of one of the sisters, that it does not follow, as a matter of law from these facts, that the defendants have title by adverse possession, and a motion to stay proceedings until the complainants establish their right of possession at law is overruled.

2. Same—Laches.

   While, in such case, it may be that a jury would be authorized to infer an actual ouster, this is cognizable in equity also, under the head of laches, and there is no reason why on that issue the case should be sent to a jury.

3. Same—Pleading.

   An answer to a bill for partition, admitting the interest of one under whom the complainants claim by descent, but denying that they are the heirs, raises an issue of identity, rather than of title; and a suspension of proceedings until their right to possession is established at law is neither necessary nor proper.

4. Same—Removal of Causes.

   In a suit for partition, removed to a federal court, it will follow the state decisions holding that a right of entry in the plaintiff, without actual seisin, is sufficient.

In Equity. Bill for partition. On motion to stay proceedings until complainants establish their title at law.

This is a bill for the partition of 161.4 acres of land situate on Price hill, within the corporate limits of the city of Cincinnati. There are between two and three hundred defendants, but, the contested questions being common to all, they are to be heard upon the answers of William Henry Elder, archbishop of Cincinnati and trustee of Mt. St. Marys' Seminary, and of John Keeshan. The cause is now before the court upon the defendants' motion to suspend further proceedings until the complainants shall establish their title at law. The bill and its amendments contain the following averments of fact:

On the —— day of May, 1816, William Barr, Sr., died, testate, and seised of the real estate above referred to, which he devised to his executors for the use of his son John M. Barr during his natural life, and after his death for the use of his wife, Maria Barr, (in the event of her survival,) during her natural life, with remainder in fee to his child or children and their heirs forever. John M. Barr died in August, 1820, leaving his wife, Maria, and one child, Mary Jane Barr, surviving him. In November, 1821, the daughter, Mary Jane Barr, died, leaving her mother, Maria Barr, (who afterwards intermarried with

John Bigelow,) surviving her. Subject to the life-estate of Maria Bigelow, said real estate descended, upon the death of Mary Jane Barr, by virtue of the laws of descent then in force in the state of Ohio, to the brothers and sisters of William Barr, Sr., then living, or the lineal descendants of those then deceased, and their descendants and heirs. The complainants are the descendants and heirs at law of Mary Grafton, deceased, who was a sister of William Barr, Sr. On the 26th day of July, 1838, Maria Bigelow conveyed by quitclaim deed the entire tract of land described in the bill, and all her right, title, and interest therein, in law and in equity, to Ephriam Morgan and Lot Pugh, their heirs and assigns, forever, with full covenants of seisin against incumbrances, and of special warranty. On the 13th of September, 1839, Lot Pugh quitclaimed his interest in said tract to his co-tenant, Ephriam Morgan, who on or about the 20th of September, 1839, entered into possession by virtue of said deeds, holding no other title whatever to said premises. Between the 1st of October, 1838, and the 16th of December, 1839, through the agency of his son-in-law Woods, Morgan procured from children of John Barr, one of the brothers of William Barr, deceased, to whom a portion of said tract descended, deeds for their interest therein, without specifying what that interest was. The bill sets out the different deeds, some 19 in number, all made to Woods, Morgan's agent, and his deed of the same on the 16th of December, 1839, to Morgan.

On the 10th of December, 1839, Morgan conveyed 74 acres of said tract to one Patrick Consadine. This was six days before he acquired title from the children of John Barr. By sundry deeds, between the 18th of May, 1843, and the 5th of May, 1858, he conveyed to Adam Moore and others about 69 acres of said tract. The residue, being about 21 acres, Morgan held until his death, which occurred some time in 1873. On the 29th day of June, 1858, before the death of the life-tenant, Maria Bigelow, the said Morgan and Woods, and Morgan's grantees, who were at that time the tenants in possession of all of said tract of land, filed their petition in the court of common pleas of Hamilton county, being the county in which said land is situate, against John B. Ennis and others, setting forth, among other things, that on the 26th day of July, 1838, Maria Bigelow conveyed to Ephriam Morgan and Lot Pugh all her right, title, and interest, being a life-estate, in said 161.4 acres; and that it was necessary to take her deposition to establish and prove the names of the brothers and sisters of William Barr, deceased, and their heirs and legal representatives. A copy of the proceedings in said cause, together with the deposition of Maria Bigelow, which was taken therein, and filed with the papers in said proceedings, is attached to an amendment to the bill, and made part thereof. The bill further charges that, after said Woods had conveyed to said Morgan the titles so acquired by him, he purchased the interests of sundry other heirs of said brothers and sisters of William Barr, deceased, whose names are fully set forth in said bill. It is further averred that Woods died, testate, seised of the interest so acquired, and that on the 15th day of September, 1857, his widow conveyed the same by special warranty deed to said Morgan.

The bill further alleges that said Morgan, and those claiming under him, continued in possession of said tract of land after the death of the life-tenant, as tenants in common with the complainants, and with the heirs of the brothers and sisters of William Barr, Sr. The bill further alleges that, shortly after the death of Maria Bigelow, life-tenant, Margaret R. Poor, claiming as heir of Mary Jane Barr, the tract of land aforesaid, filed in the circuit court of the United States for the southern district of Ohio her declaration in ejectment against Patrick Considine, Ephriam Morgan, and others in possession, including Archbishop John B. Purcell, (who was made a party subsequent to the filing of the declaration, and to whose office and title the defendant Arch-

bishop Elder succeeded,) seeking to recover possession of the whole of said tract of land. Judgment was rendered in favor of the defendants in said case by the circuit court, and affirmed by the supreme court, of the United States. The complainants further allege that, when said case was taken on error to the supreme court, a bill of exceptions was filed, embodying an agreed statement of facts wherein appears, among other things, a full statement of the facts relative to the filing of the petition aforesaid, on the 29th of June, 1858, in the court of common pleas of Hamilton county, by said Morgan and others, and a copy of the proceedings and order of the court therein; also the names of the brothers and sisters and some of their children, the heirs of said William Barr, Sr. The bill sets forth other particulars relating to said bill of exceptions, but it is not necessary to refer to them more particularly. On the 4th day of December, 1868, (which was after the decision by the supreme court of the United States of the case of *Poor* v. *Considine,* 6 Wall. 458,) Morgan, Consadine, Archbishop Purcell, and others, being all the parties in possession, entered into a written agreement, authorizing and empowering T. D. Lincoln and Fayette Smith, as trustees, to buy in for their use the outstanding title of the several heirs of William Barr, John T. Barr, Margaret Barr Keys, who the complainants allege were children of Samuel Barr, who was a brother of William Barr, Sr. Complainants further allege that said trustees purchased and received deeds for titles of said parties in December, 1868, January and February, 1869, and also from sundry other persons, and afterwards conveyed the interests so acquired to the several parties to the said written agreement. The complainants further say that on the 1st of April, 1871, Samuel Barr and wife conveyed by deed to said Lincoln in trust, for the benefit of sundry parties, all their interest in said lands, in which deed it was recited, among other things, that Mary Jane Barr, the daughter of John M. Barr, was the owner in fee of said lands, subject to the life-estate of her mother, the said Maria Bigelow, and that on the death of said Mary Jane Barr an undivided fifth part of said property passed by descent to Andrew Barr, and upon his death to his children; and it was further recited in said deed that the interest so conveyed was the interest of said parties in said tract of land. The bill further avers that said Lincoln afterwards purchased the interests of several other parties, heirs in said lands, for the benefit of the parties to said written agreement, and conveyed to them all of the interests so acquired.

The separate answers of Archbishop Elder and of John Keeshan deny the heirship of the complainants, and set up, among other things, that Ephriam Morgan entered upon the sole, open, notorious, and exclusive possession of said premises on the 13th day of September, 1839, claiming the sole title and ownership thereof in fee-simple, adversely to the complainants and each of them, and all the world. The answer of Archbishop Elder then sets up the conveyance aforesaid, in fee, by said Morgan to Patrick Considine, of 71 acres of said tract, and that Considine made sundry improvements of a permanent character upon the same, and collected and received all the issues, rents, and profits thereof, and appropriated them to his own exclusive use; that in May, 1847, by deed in fee-simple, he conveyed five acres of said tract to Archbishop Purcell, and said deed was on the 5th day of April, 1848, recorded in the public records of Hamilton county. It further avers that said Purcell immediately entered into the open, notorious, and exclusive possession of said premises, claiming the entire title thereto, adversely to the complainants and all the world, and shortly thereafter commenced the erection

thereon of a stone seminary and theological college building, which was completed at a cost of about $30,000; that he proceeded to make other improvements for the purposes of said seminary, the cost thereof, up to 1871, being about $50,000; that in May, 1858, said Morgan conveyed, by deed in fee-simple, to said Purcell, about 10 acres more of said tract; that subsequently said Purcell became the grantee, in fee-simple, of all the residue of said 71 acres, to-wit, 56 acres, of which Patrick Considine died seised, having devised the same to his brothers and sisters for life, with remainder in fee to said Purcell. The answer further sets forth an open, notorious, and adverse possession of this tract, and the making of costly and permanent improvements thereon.

Exceptions having been sustained to this answer, the defendant filed a further answer, in which he admits that William Barr, Sr., died seised of the real estate described in the bill. He admits the admission of his will to probate, and that the supreme court of the United States in the case of *Poor* v. *Considine*, 6 Wall. 458, decided that, upon the death of Mary Jane Barr, said real estate descended to the brothers and sisters of William Barr, Sr., or their heirs, as heirs at law of the said Mary Jane Barr; averring that he has no personal knowledge who the brothers and sisters were, and is therefore unable to answer whether they were the persons named in the second amendment. He denies, upon information and belief, that Mary Jane Grafton, under whom the complainants claim to derive title, was one of the sisters. He admits the conveyances from Maria Bigelow, from Ephriam Morgan, and Lot Pugh, as set forth in the amended bill, and the conveyances from Lot Pugh to Ephriam Morgan, and avers, on information and belief, that they entered into possession of the premises conveyed to them under said deeds, claiming adversely to the complainants and each of them and all the world. He denies that Morgan had no other title than that derived from Bigelow. He admits that Morgan, having entered into possession as aforesaid, was advised that the remainder in fee had descended, upon the death of Mary Jane Barr, to the brothers and sisters of William Barr, Sr., and their heirs, and that thereupon he purchased all the outstanding interest of all the heirs of said brothers and sisters in said remainder, as he then believed. He further admits the purchase from the different parties set forth in said amended bill, and that the conveyances were all in fee-simple, purporting to convey the entire interest of the grantors in said tract of land, but avers that he has no knowledge or sufficient information upon which to found a belief as to the relationship of the grantors to the said Mary Jane Barr. He admits the execution of the deeds from William Wood and wife to Ephriam Morgan, which are set forth in the amended bill; also the filing of the petition in the court of common pleas of Hamilton county, by Ephriam Morgan and others, for the purpose of taking the deposition of Maria Bigelow, as set forth in the amended bill; also the bringing of the suit of *Poor* v. *Considine*, and the agreed statement of facts as set forth in the bill, and the taking of the said case to the supreme court, and the decision of that court therein. He further admits the averments of the bill relating to the agreement between the parties therein

named and Lincoln and Smith, as set forth, but avers, upon information and belief, that when said agreement was made the parties thereto, who were then in possession of said premises, claimed to hold adversely to the Barr heirs, and that the purchases by Lincoln and Smith were made by way of compromise and of buying peace. He admits the other purchases by Lincoln and Smith set forth in the bill, and the deed by the heirs of Andrew Barr, but avers that they, too, were made to avoid litigation and by way of compromise. The answer further sets up that each one of the grantees under whom the defendant claims entered into the open, notorious, continuous, exclusive, and adverse possession of the premises occupied by him, and described in the bill, under recorded deeds in fee-simple, with covenants against incumbrances and of general warranty, paying full value, and relying upon other deeds as conveyances to them of the entire title to said premises; that they have, as has defendant, so exclusively occupied, and so claimed in good faith, and "without notice of the claim of these complainants, or their alleged ancestors in title, or either of them, and that said open, notorious, exclusive, and adverse possession has continued unbroken down to the present time." It is not necessary to set forth the details of the answer of John Keeshan. In every essential particular it raises the same questions and presents the same defenses as the answer of Archbishop Elder, and is subject to the same ruling.

For former reports, see 38 Fed. Rep. 165; 40 Fed. Rep. 559.

*Cowan & Ferris* and *Henry T. Fay*, for complainants.

*Lincoln, Stephens & Lincoln, Bateman & Harper,* and *F. J. Moorman,* for respondents.

Before JACKSON and SAGE, JJ.

SAGE, J., (*after stating the facts as above.*) The contention of counsel for the defendants in support of their motion, that a suit in equity for partition is not an appropriate proceeding to try title to property, and, when the complainant's title is legal and is disputed, the bill will be dismissed, or proceedings stayed until he establish his title at law, was recognized by this court in *McClaskey* v. *Barr*, 40 Fed. Rep. 563. That adverse possession ripens into title, and that in all cases the title vests as soon as the remedy against the adverse holder is barred by the statute of limitations, is so well established by decisions of the supreme court of Ohio, (*Kyser* v. *Cannon*, 29 Ohio St. 359; *Rhodes* v. *Gunn*, 35 Ohio St. 387,) and by the supreme court of the United States, (*Leffingwell* v. *Warren*, 2 Black, 605; *Croxall* v. *Shererd*, 5 Wall. 289; *Bicknell* v. *Comstock*, 113 U. S. 152, 5 Sup. Ct. Rep. 399; *Campbell* v. *Holt*, 115 U. S. 620, 6 Sup. Ct. Rep. 209,) that it is not open to be disputed. The question to be decided is whether the answers present a good plea of the statute of limitations, or that the title is legal, and is disputed.

The will of William Barr, Sr., which it is admitted was duly probated in the probate records of Hamilton county, devised the real estate described in the bill to his executors for the use of his son, John M. Barr, during his natural life, and after his death in trust for his wife,

Maria Barr, afterwards Maria Bigelow, during her natural life, with remainder to the children of John M. Barr, and their heirs, forever. The conveyance by Maria Bigelow to Ephriam Morgan and Lot Pugh was the conveyance, not of a legal, but of an equitable, estate, of which the grantees by reason of the probate of the will were bound to take notice. *McArthur* v. *Scott*, 113 U. S. 405, 5 Sup. Ct. Rep. 652. The defendants admit that upon the death of Mary Jane Barr said real estate descended, subject to the life-estate of Maria Bigelow, to the brothers and sisters of William Barr, Sr., or their heirs, as heirs at law of the said Mary Jane Barr, but they deny that Mary Grafton was one of the sisters of said William Barr, Sr. It is insisted that, as the deeds to Morgan and Pugh, and the subsequent deeds by them to grantees under whom the defendants claim, purported to convey the fee-simple, that they gave at least color of title upon which an adverse possession could be founded. That a deed purporting to convey a fee, made by one not having title, is sufficient to give color of title, is true; but that conveyances made during the life of Maria Bigelow, the life-tenant, could be the foundation of a claim to adverse possession during her life-tenancy, is not true. By her deed she transferred all her interest in the property and her exclusive right to possession. So long as she lived there could be no possession adverse to the heirs of Mary Jane Barr, for the reason that their right of possession, as tenants in common, did not accrue until the death of Mary Bigelow. For that reason the deeds purporting to convey the fee, made during her life-time, could not operate as an ouster of those entitled in remainder. There was no co-tenancy then in existence. The estate in remainder was vested, it is true, but the right of possession, and therefore the co-tenancy, was postponed until her death. But it is claimed that the character of the improvements made under the deeds above referred to during her life-time may be referred to as indicating the intention of the parties in possession to exercise the rights of complete ownership of property, and as reflecting upon the character of their possession from and after her death. This proposition, properly guarded, as will be hereinafter indicated, is recognized as sound. The right of complainants to possession and partition sprang into existence upon the termination of the life-estate by the death of Maria Bigelow.

It is averred by the complainants, and admitted by the defendants, that, in 1838 and 1839, Morgan procured some 19 deeds from children of John Barr, Samuel Barr, and Jane McWhirter, conveying their interest in the entire tract of land described in bill. Upon the death of Maria Bigelow, which occurred, according to the averments of the bill, in August, 1860, Morgan's grantees, by virtue of these conveyances and subsequent conveyances to them, became co-tenants with complainants, and with the heirs of Mary Jane Barr, in the property. Now, what are the averments upon which the claim of adverse possession, subsequent to that time, is based? There are averments, already noticed, of continuous and exclusive possession, of receiving and retaining all the rents and profits, of paying taxes, and of making permanent and costly improvements, all claimed as indicating a holding adversely, and the as-

sertion of absolute ownership. But there is nowhere any averment of notice to the co-tenants not in possession, excepting as it is to be inferred from the acts above stated. On the contrary, the answer filed January 18, 1890, contains the averments that the open, notorious, continuous, and exclusive possession of said premises by the defendants and all their grantors was "in good faith, and without notice of the claims of these complainants or their alleged ancestors in title, or either of them."

*Ziller's Lessee* v. *Eckert*, 4 How. 289, is in point. There was in that case a devise of land to the son of the testator, with a provision that the widow should continue in possession and occupation of the premises until the son arrived at the age of 15 years. The supreme court held that her possession was not adverse to the heirs of the child during that period. So here the possession of Morgan and of his grantees, during the life-time of Maria Bigelow, was not adverse to the heirs of Mary Jane Barr. The supreme court further held that, as the possession "was originally taken and held in subserviency to the title of the real owner, a clear, positive, and continued disclaimer and disavowal of the title, and assertion of an adverse right, and to be brought home to the party, are indispensable, before any foundation can be laid for the operation of the statute." The court further said that—

"Otherwise the grossest injustice might be practiced; for without such notice he might well rely upon the fiduciary relations under which the possession was originally taken and held, and upon the subordinate character of the possession as the legal result of those relations."

And still further:

"The statute, therefore, does not begin to operate until the possession, before consistent with the title of the real owner, becomes tortious and wrongful by the disloyal acts of the tenant, which must be open, continued, and notorious, so as to preclude all doubt as to the character of the holding, and the want of knowledge on the part of the owner."

It is urged that the purchase and procurement of the conveyances by Morgan above referred to, and the purchases by Lincoln and Smith as trustees on behalf of the defendants, subsequent to the death of Maria Bigelow, ought not to be treated as recognitions of the complainants' title, but rather as purchases of the outstanding interests, for the protection of the defendants' title, made to avoid litigation, and by way of compromise and buying peace. All the conveyances since the case of *Poor* v. *Considine* are averred in the answer to have been so made, and it is urged that they did not, therefore, interrupt the continuity of the adverse possession claimed on behalf of the defendants. All this may be granted for the sake of the argument, but without helping the defendants. The question is not whether those acts interrupted the continuity of possession, but how do they bear upon the question of notice to the co-tenants who were out of possession? Counsel say that the defendants did not claim title under any of these deeds, and that their possession and title are referred entirely to the deeds from Morgan to his grantees, and the derivations of title subsequently by defendants under those deeds. It is easy to see that if Morgan had made no purchases from the heirs

FEDERAL REPORTER, vol. 42.

of Mary Jane Barr, and taken no deeds from them, the position of the defendants would be much stronger than it is. In that case, having no relation of co-tenancy with the complainants, their holding from the death of Maria Bigelow might well have been regarded as adverse. But one result of Morgan's taking those deeds was to put him in the relation of co-tenant with the complainants instantly upon the death of Maria Bigelow, and the question now is, has the subsequent holding by the defendants been accompanied by acts which amount to notice to the co-tenants of an adverse holding? How are we to reconcile with any such theory the agreed and recorded statement of facts which was embodied in the bill of exceptions in the *Poor and Considine Case*, or the written agreement authorizing and empowering T. D. Lincoln and Fayette Smith, as trustees, to buy in, for the use of the defendants or their grantors, the outstanding title of the several heirs of William Barr, John T. Barr, and Margaret Barr Keys, all grandchildren of 'Samuel Barr, who is alleged to have been a brother of William Barr, Sr.? Can any of these acts or transactions be construed as notice to the co-tenants of an adverse holding? Every one of them indicates, as far as the question of notice is concerned, as does the proceeding of record in which the deposition of Maria Bigelow was taken and filed, a holding in subserviency, rather than in opposition to the title and interests of the co-tenants; and we are of opinion that it is impossible to reconcile those acts, taken in connection with the other admitted facts, with the claim of an adverse holding. We are considering them solely and exclusively with reference to their bearing upon the question of notice to the co-tenants. It is not pretended that an actual notice was given. On the other hand, as has already been shown, the answer denies any knowledge even of the existence of the complainants. We are not controverting the proposition that if no such notice had been given, the defendants might, without prejudice, have taken deeds for outstanding interests of co-tenants, by way of compromise and to avoid litigation; but it has been held that where the possession was adverse, so as to amount to a disseisin, the disseisin would be purged by the purchase of shares of several of the heirs soon after, and the subsequent possession must be considered as the possession also of the other heirs, from whom title had not been obtained. *Parker* v. *Proprietors*, 3 Metc. 99. Now, regarding the fact that costly and permanent improvements were made by Archbishop Purcell in the time of the life-estate of Maria Bigelow,, and the fact, also, that improvements of like character were made by him after her death, as indicating a claim to the entire estate, and intention to hold adversely, we must, in considering the question whether notice to the complainants can be reasonably inferred, take into account that the recorded deeds to the defendants by co-tenants of complainants amounted, in the absence of actual notice to the contrary, to notice that the defendants recognized the co-tenancy. These suggestions apply, with perhaps even greater force, to the subsequent deeds from co-tenants procured through Lincoln and Smith, trustees, and containing recitals recognizing in express terms the co-tenancy. The admitted facts, as they appear from the pleadings, cannot be reconciled

with the proposition that there has been an adverse possession, so open, continued, and notorious "as to preclude all doubt of the character of the holding or the want of knowledge on that part of the owner," which is what the supreme court in *Zeller's Lessee* v. *Eckert* declared to be necessary.

But it is urged that exclusive possession by a tenant in common for a great length of time, without interruption or claim by the other tenants, is evidence from which a jury would be authorized to infer or presume an actual ouster, and that on similar evidence a grant may be presumed. This is undoubtedly true as a general proposition, but it falls also under the head of laches, and is cognizable in equity. In *Hall* v. *Law*, 102 U. S. 461, long-continued possession of this kind was held to be sufficient to authorize a decree dismissing the bill, on the ground that the claim set up by the complainants was stale. There is therefore no reason why upon this proposition the case should be sent to a jury.

The answer denies that the complainants are descendants of Mary Grafton, and denies their heirship, and it is contended that this is a denial of title, and hence that the defendants' motion must be granted. It is urged that the asserted claim of the complainants depends wholly upon their heirship, which lies at the threshold of their case, and that upon it depends their whole title. The case of *Wilkin* v. *Wilkin*, 1 Johns. Ch. 111, is cited; but in that case whether the complainants were heirs of the person last seised, was only one of the questions in dispute. In this case it is admitted by the defendants that the land described in the bill descended in accordance with the provisions of the will of William Barr, Sr., to the heirs at law of Mary Jane Barr. The denial of the heirship of the complainants, therefore, raises a question of identity, rather than of title, and does not, we think, make it necessary or proper to submit the question to a jury.

The last objection which we think it necessary to consider is that the complainants are not in possession, and that it matters not for how short a time the adverse possession has been maintained, for 21 days is as good for this proposition as 21 years; and, if this adverse possession is established, the tenants do not hold together, and the plaintiff must try his title in ejectment before he will be in a position to sue in partition. But we have already seen that the admissions by the defendant in the pleadings are sufficient in themselves to defeat the claim that there has been an adverse possession. Moreover, this suit was brought in a state court, and removed to this court, and, as was held in *Tabler* v. *Wiseman*, 2 Ohio St. 207, a right of entry will entitle a party to the proceedings in partition, in Ohio, without the actual seisin required in some other states. The authorities are not uniform on this point. In some states it has been held that the complainant must allege that he is seised, which imports a present possession as tenant in common or coparcener, and that a mere right of entry, if shown, will not be sufficient. It has been so held in New York and in Vermont. In other states, as in Maine, Massachusetts, New Hampshire, Indiana, Minnesota, and Illinois, it has been held, on the other hand, that a disseised co-tenant may have partition.

This being the rule in Ohio, we think it should be the rule in this case. Recurring to the holding in *Lucas* v. *King*, 10 N. J. Eq. 280, cited in the ruling made by this court upon the exceptions to the answer, (40 Fed. Rep. 564,) that "if, when the titles are spread before the court upon the pleadings, the court can see that there is no valid legal objection to complainant's title, there is no reason why the court should not proceed to order the partition," (see, also, *Overton's Heirs* v. *Woolfolk*, 6 Dana, 374,) our conclusion is that the defendants' motion must be overruled.