1820.
Coxe
v.
Smith.

</div>

Decree accordingly.

---

Coxe and others *against* Smith and others.

When, on a bill for a partition, the legal title is disputed and doubtful, the course is to send the plaintiff to a Court of law, to have his title first established.

But where the question arises upon an equitable title, set up by the defendants, this court must decide on the title.

Where a person having the legal title to lands, but in trust, as the defendants alleged, for them, sold and conveyed his right and title, for a valuable consideration, to a *bona fide* purchaser, without notice, who remained in possession of the land for eighteen years before his death, and devised the same by will: *Held*, that after the lapse of thirty years from the date of the deed, there being no evidence of its being fraudulent, the devisees of such purchaser were entitled to hold the lands discharged of the trust.

BILL for a partition of a tract of land of 29,812 acres, lying in the counties of *Tioga* and *Broome*. It appeared from the pleadings and exhibits in the cause, that Col. *Daniel Coxe*, of *Trenton, New-Jersey*, (grandfather of the plaintiffs, *Daniel Coxe*, and *Grace Kempe*,) who died in 1739, derived from his father, Doctor *Coxe*, of *London*, sundry rights under the crown of *Great Britain*, to lands in the *North American* colonies. That some years after his death, his representatives, on relinquishing those rights, received in lieu thereof, an order of the king and council, or *mandamus*, dated *April* 14, 1769, for 100,000 acres of land,

<div align="right">

*Nov.* 29*th*, 1819, and *Jan.* 7*th*, 1820.

</div>

to be taken up in tracts of not less than 20,000 acres, in the then province of *New-York*, to *Daniel Coxe*, plaintiff, *William Coxe*, since deceased, *Rebecca Coxe*, since deceased, *Grace Kempe*, late *G. Coxe*, and her husband, *John Tabor Kempe*, since deceased. That in this *mandamus*, *D. C.* had an interest of *five sixteenths*, *W. C. five sixteenths*, *R. C. four sixteenths*, and *G. K.*, and her said husband, each *one sixteenth.* The parties located 47,000 acres in *Tryon*, now *Oneida* county. Of the remaining 53,000 acres, *D. C.*, and *K.* and his wife, were entitled to seven sixteenths, or 23,187 acres and a half, and *W. C.* and *R. C.*, to the residue, being 29,812 acres and a half. *W. C.* and *R. C.*, employed Dr. *William Smith* to locate their 29,812 acres, and covenanted that he should have, for his services, the one moiety of the share of *W. C. Smith*, accordingly, procured leave to locate at *Owego*, near the north line of *Pennsylvania*, and on the 3d of *October*, 1774, obtained a warrant of survey, for that purpose. *Kempe*, who had acquired the share of *D. C.*, and his wife's right, and had made a location on the east side of *Lake Champlain*, abandoned that location, and through the agency and information of *Smith*, located the 23,187 acres at *Chenango*, in the vicinity of the location at *Owego*, and obtained a warrant for that purpose. The two locations were separate and distinct, and for separate uses. *Caveats* were entered against patenting these locations. By the exertions of *Smith*, *W. C.*, and *R. C.*, the *caveat* as to the 29,812 acres was withdrawn, and a patent was issued, dated *January* 5, 1775, according to the practice and forms of office, to *D. C.*, *W. C.*, *R. C.*, *J. D.*, *K.* and *G.* his wife, the original nominees in the *mandamus*, for the quantity of land so located, being the same tract for the partition of which the bill was filed. *W. C.*, *R. C.*, and *Smith*, alone paid for the expenses of the location of the 29,812 acres, and paid all the usual fees on passing the patent, among which was the sum of 89*l.* 8*s.* to *J. T. Kempe*, as Attorney General, for his official *fiat* to the patent. *Kempe*

alone paid all the expenses of the location at *Chenango.* After the patent issued, a new agreement was entered into between *Smith*, *W. C.*, and *R. C.*, dated the 9th of *January*, 1775, by which it was stipulated, that *Smith*, instead of half of the share of *W. C.*, should have, and be entitled to, one third of the 29,812 acres, for his share, he having paid one third of the expenses of obtaining the patent. *Daniel Coxe*, one of the nominees in the *mandamus*, and named, also, in the patent, on the 25th of *February*, 1775, agreed to join in all necessary conveyances, &c. to assure to *Smith* one third of the said tract so located at *Owego*. *Kempe* hesitated and delayed, on various pretexts, to release his title to the *Owego* location; and the *caveat* against the *Chenango* location, continued until the revolutionary war commenced, when *Kempe* and *D. Coxe*, removed to *England*, and fixed their residence there. On the 29th of *September*, 1783, *W. C.*, and *R. C.*, released to *Smith* their right in law and equity, to an undivided third part of the 29,812 acres. Since the peace of 1783, *D. C.* refused to release his right to the representatives of *W. C.*, *R. C.*, and *Smith*, and said that he had released it to *Kempe*. On the 9th of *December*, 1784, the representatives of *W. C.*, and *R. C.* entered a *caveat* in the secretary's office, against any patent issuing for the *Chenango* lands, until a release should be obtained from the other *nominal* grantees in the patent for the *Owego* lands, to them and *Smith*. *Rebecca Coxe* died in 1802, and *Smith* died in 1803. On the 26th of *August*, 1789, for the consideration of 1,500 pounds, *D. C.* conveyed to his father-in-law, *John Redman*, all his right and title to the five undivided sixteenth parts of the said tract of 29,812 acres. The defendants, in their answer, averred, that this deed was not *bona fide*, or for a valuable consideration, but upon some secret trust; but there was no proof of this allegation. In *March*, 1810, certain settlers on the said land, presented a petition to the legislature, suggesting, among other things,

that the title of *J. T. Kempe* to two sixteenth parts, in the said land, had, in consequence of his attainder, become vested in the people. The attorney general, to whom the petition was referred, reported, that the people had no title to any part of the land, and that the representatives of *W. C.*, *R. C.* and *Smith*, ought not to be molested or disturbed in the enjoyment thereof; in which report the house of assembly concurred. In consequence of an act of the legislature, passed in 1784, or 1785, which declared all *British* or colonial warrants of survey, except to officers and soldiers, for military services, not actually executed, null and void, *R. L. Hooper*, and his associates, who had entered a *caveat*, prevailed. The bill alleged that the representatives of *W. Smith* were entitled to one third of the tract of 29,812 acres, *John Redman Coxe*, to five sixteenths of the residue, *D. Coxe* and *Grace Kempe*, each to one sixteenth, the representatives of *W. Coxe*, to seven sixteenths, and the people of the state to the other two sixteenths. The answer denied that any person had any joint or equitable claim to any part or share in the said tract, but the representatives of *W. Smith*, *William Coxe*, and *Rebecca Coxe*, except such parts as *Daniel Coxe* and *Grace Kempe* might be entitled to, as heirs of *Rebecca Coxe;* and that, in whomsoever the legal title to any part of the said land was now vested, they must be deemed, in equity, trustees for the legal representatives of *W. Smith*, *W. C.*, and *R. C.*, according to their several shares therein.

The cause was brought to a hearing on the pleadings and proofs.

*Harison*, *Hoffman*, and *B. Robinson*, for the plaintiffs.

*Sampson*, for the defendants claiming under *William* and *Rebecca Coxe*.

*T. A. Emmet,* for the defendants, *William M. Smith* and *Charles Smith.*

1820.

COXE
v.
SMITH.

*Burr,* for other defendants claiming under *W. Smith.*

*For the plaintiffs,* the following cases were cited: 1 *Bro. P. C.* 200. 4 *Ves.* 667. 686. 5 *Ves.* 720. *note.* 722. 1 *Madd. Ch. Pr.* 198. 1 *Fonb. Eq.* 18, 19. 8 *Ves.* 143. 1 *Ves. & Beames,* 551. 236.

*For the defendants,* the following cases were cited: 2 *Atk.* 380. 3 *Atk.* 4. 2 *Bro. P. C.* 261. *Amb.* 586. 7 *Ves.* 341. 1 *Johns. Ch. Rep.* 117. 149. 3 *Johns. Ch. Rep.* 302. 3 *Johns. Rep.* 216. 9 *Johns. Rep.* 406.

The cause stood over for consideration until this day.

*Jan. 4th, 1820.*

THE CHANCELLOR. This is a bill for a partition of a tract of land, containing 29,812 acres, lying in the counties of *Tioga* and *Broome.* According to the allegations of the plaintiffs, the representatives of *William Smith,* deceased, are entitled to an undivided third part of the premises, the plaintiff, *John Redman Coxe,* to five sixteenths of the residue, the plaintiffs, *Daniel Coxe* and *Grace Kempe,* each to one sixteenth of the residue, the representatives of *William Coxe,* deceased, to seven sixteenths of the residue, and the people of this state to two sixteenths of the residue. The defendants admit the right of the representatives of *Smith,* and the rights of *Daniel Coxe* and *Grace Kempe,* but deny the right of the plaintiff *John Redman Coxe,* and of the people, and claim fourteen sixteenths of two third parts of the premises, as belonging in equity to the representatives of *William Coxe.* The parties have gone into proof on the subject of the equitable title set up on the part of the defendants.

1. The first point is, whether the defendants can set up equitable rights in opposition to the legal title, and claim partition, according to those rights, by an answer.

When the legal title is disputed and doubtful, the course has been, to send the plaintiff to law to have that title established before he comes here for a partition. (*Wilkin* v. *Wilkin*, 1 *Johns. Ch. Rep.* 111.) But when the question arises upon an equitable title set up on the part of the defendants, this Court must decide the title, for equitable titles belong peculiarly to this Court, and the parties cannot be sent to law. It is the proper province of this Court to recognise and support equitable titles, and there can be no other objection to the inquiry, than the form and object of the bill. If the Court cannot take cognisance of the equitable title upon this bill, it would only be to let the cause stand over until the defendants, or such of them as ask for the recognition of their equitable title, can file a cross bill. But can that be necessary ? In what way, or from what causes, the Court of Chancery first acquired jurisdiction in partition, is not now material. The jurisdiction is settled, and recognised by statute. (*Vide* Act, sess. 36. c. 100. s. 16, 17.) When this Court sustains a bill for a partition, it acts as a Court of equity, and not as a Court of law, and equitable rights are true and perfect rights, in the contemplation of this Court. In *Cartwright* v. *Pultney*, (2 *Atk.* 380.) the plaintiffs' bill for partition was founded on an equitable title ; and Lord *Hardwicke* said, he must determine it, though the objection there was, that it was an equitable title, not a legal one. He decreed a partition, and that the trustees, in whom the legal title resided, should convey.

If the plaintiff can come into this Court for a partition, upon an equitable title, the defendants, who are brought here upon such bill, can surely set up such a title to be recognised and protected upon the partition.

2. Assuming that the equitable title is properly before the Court for consideration, the evidence is sufficient to satisfy me, that the 29,812 acres, at *Owego*, were located and surveyed according to the understanding and agreement of all the parties concerned in interest under the *mandamus*, for the exclusive use and benefit of *William* and *Rebecca Coxe*. *Kempe*, who represented the other interests of himself and his wife, and of *Daniel Coxe*, under the *mandamus*, made a separate location, for their distinct interests, first upon lake *Champlain*, and then on the *Chenango*. The expenses of each location and survey, were borne by the parties separately, and the locations, by the various acts and declarations of the parties, were treated as locations of separate and detached interests. When the patent issued, in 1775, for the location of the 29,812 acres at *Owego*, for *William* and *Rebecca Coxe*, it issued according to the form and practice of the government in such cases, in the name of all the nominees in the *mandamus*. But *Daniel Coxe*, and *Kempe* and his wife, took the legal title in trust for *William* and *Rebecca Coxe*, and for *William Smith*, who had been admitted to a share. The fact, that *William* and *Rebecca Coxe*, and *William Smith*, paid all the fees of survey, and particularly the patent fees, of which 89*l*. 8*s*. were paid to *Kempe*, as Attorney General, being a customary and full fee, for giving his *fiat* to the patent, is decisive evidence of the trust; and this expenditure of money, with the knowledge and assent of *Kempe*, is evidence of part performance of the original agreement, and ground for a decree for a specific performance. I would refer, also, particularly to the letters of *J. T. Kempe*, of the 5th of *November*, 1774, and of the 28th and 29th of *January*, 1775; to his instructions for the survey of his warrant, or location, for the 23,188 acres, on the *Chenango*; to the *caveat* of the 9th of *December*, 1784; to the letter of *William Coxe* of *February* 11th, 1775; and to the report of *Van Vechten*, the Attorney General, to the Legislature, of the 2d of *February*, 1811.

1820.

Coxe
v.
Smith.

3. But another question arises, even upon the assumption of the trust, and that is, upon the force and effect of the deed from *Daniel Coxe* to Dr. *John Redman*, of the 26th of *August*, 1789. That deed was proved before the Mayor of *Philadelphia*, in *December*, 1789, and purports to be a conveyance, in fee, of his legal title to the five sixteenth parts of the patent, for the consideration of 1,500 pounds, and the receipt of the consideration is, according to the practice in conveyancing at that day, endorsed upon the deed. The bill then states, that *Redman* being seised under that deed, made his will on the 9th of *November*, 1807, and speaks in it of "his purchase" by that deed, and devises the land to his grandson, the plaintiff, *John Redman Coxe*, and to *Phineas Bond*, in trust, for the said *Daniel Coxe*, (his son-in-law,) and his daughter, and their five children; and that having made his will, he died seised, and that the plaintiff, *John Redman Coxe*, claims under that will. The deed and will are in proof.

If that deed was received by Dr. *John Redman*, *bona fide*, and for the valuable consideration it imported, he, and those who claim under him, took the legal right of *Daniel Coxe*, discharged of the trust. The defendants, in their answer, aver that the deed was not *bona fide*; but there is no evidence in the case that impeaches it; and after such a lapse of time, (being thirty years from the execution of the deed, during eighteen years of which, Dr. *John Redman* is averred to have remained seised,) and after such new rights acquired under the purchaser, I am induced to think the presumption must now be taken to be in favour of the deed, and that it was incumbent on those who set up the trust in *Daniel Coxe*, to give some evidence that the deed was not what it purported to be.

*Decree.*

The following decree was entered: "*Inasmuch as it appears* to the court, that the letters patent under the great seal of the late colony of *New-York*, bearing date the 5th

day of *January*, 1775, by which the premises mentioned and referred to in the same, were granted to *Daniel Coxe*, *William Coxe*, *Rebecca Coxe*, and *John Tabor Kempe*, and *Grace* his wife, were so granted, from conformity to the forms of office, and truly and in fact, to and for the separate use and benefit of the said *William Coxe* and *Rebecca Coxe*, and that the said *Daniel Coxe*, *John Tabor Kempe*, and *Grace* his wife, became trustees for their proportion of the said premises, granted, as aforesaid, by the said letters patent, to the said *William Coxe*, and *Rebecca Coxe*, in whom, and in *William Smith*, hereinafter mentioned, the equitable title resided : and it further appearing, that *William Smith*, in the pleadings mentioned, was entitled to one equal undivided third part of the said premises, in the manner set forth in the said pleadings : and it further appearing, that the said *Daniel Coxe* being seised of the legal title under the said patent, to five parts out of sixteen, in the remaining two third parts of the said premises, in trust aforesaid, did, on the 26th day of *August*, 1789, by a deed duly executed, purporting to be given for a full and valuable consideration, convey in fee to *John Redman*, his said legal right and interest in the premises, without any declaration or notice of the said trust, and nothing appearing in the case to affect the presumption arising from the deed, the lapse of time, and the long seisin, and last will of the said *John Redman*, in favour of the said deed, as being a *bona fide* purchase, for a valuable consideration : and it further appearing, from the pleadings and proofs, and the report of the attorney general, of the 2d day of *February*, 1811, that the people of this state have no valid title to any part of the said premises, from or under the said *John Tabor Kempe*, and the equitable rights of the parties being cognisable in this suit ; it is thereupon *Ordered*, &c. that the legal representatives of the said *William Smith*, being defendants in this cause, are entitled to one equal undivided third part of the premises, whereof partition is sought in and by the plain-

tiff's bill; and that *John Redman Coxe*, one of the plaintiffs, as surviving trustee under the last will and testament of *John Redman*, deceased, is entitled to five equal undivided parts, out of sixteen of the remaining two third parts of the said premises; and that the plaintiff, *Daniel Coxe*, is entitled to one equal undivided sixteenth part of the said two third parts of the premises, as one of the heirs at law of *Rebecca Coxe*, deceased, in the pleadings mentioned; and that the plaintiff, *Grace Kempe*, is entitled to one other equal undivided sixteenth part of the said two third parts of the premises, as one of the heirs at law of the said *Rebecca Coxe*; and that the representatives of *William Coxe*, deceased, being defendants in this cause, are entitled to nine equal parts out of sixteen, being the residue of the said remaining two third parts of the premises. And it is further *Ordered*, &c. that it be referred to one of the masters of this Court, to enquire into, ascertain, and state to the Court, the subdivision and proportions of the rights and interests aforesaid, between the several representatives of *William Smith*, and of *William Coxe*, as aforesaid, and that the master take such proof, and require the production of such deeds and papers as he may deem necessary, and which may be taken and required according to the course and practice of the Court, and that he report with all convenient speed, to the end, that upon the confirmation of his report, a commission may issue to make partition accordingly. And all further directions and questions are reserved until the coming in of the report."