# ROLLER *v.* CLARKE.

EQUITY; PARTITION; EQUITY PRACTICE; APPEALABLE ORDERS; APPEL-
LATE PRACTICE.

1. *Quœre,* whether without actual possession of the parties, a bill in
   equity for partition is maintainable in this District; *referring* to
   Williams v. Paine, 7 App. D. C. 116; S. C., 169 U. S. 55.
2. A bill in equity for partition as to one set of defendants and removal
   of cloud from title as to another defendant wholly disconnected
   from them, is multifarious; *following* Fields v. Gwynn, 19 App.
   D. C. 99.
3. Where in a partition proceeding a decree was passed dismissing the
   bill as to one of the parties who claimed the legal title, on the
   grounds that as to him the court had no jurisdiction, that the bill
   was multifarious and the complainants were barred by their laches,
   but reserving the cause for further proceedings as between the
   other parties; and thereafter partition was granted as between
   such other parties and a decree for sale passed but no sale there-
   under was attempted by the trustee for several years, after the
   lapse of which time the party as to whom the bill had been dis-
   missed filed an intervening petition alleging adverse possession
   under a legal title, praying that all proceedings in the cause since
   the dismissal of the bill as to him, be vacated, and that sale by
   the trustee be stayed until final hearing, it was *held,* reversing an
   order denying the petition, that:
   (1) The lower court, under the circumstances, should have suspended
   all proceedings and given the complainants a reasonable time to
   establish their title at law, if requested, or else have dismissed
   their bill without prejudice, *following* Mudd v. Grinder, 1 App.
   D. C. 418; Walker v. Lyon, 6 Id. 484; Williams v. Paine, 7 Id. 116,
   and Smith v. Butler, 15 Id. 345; and that
   (2) The decrees for partition and sale together did not constitute a
   final decree in the cause, which, after the term, passed beyond the
   lower court to vacate; *distinguishing* Schwarz v. Costello, 11 App.
   D. C. 553.

4. The practice of suggesting defects in the transcript of record on appeal, or in the printed record for hearing in this court, after the case has been decided here, adverted to and not approved.

No. 1151. Submitted March 6, 1902. Decided April 1, 1902.

HEARING on an appeal by an intervening party from an order of the Supreme Court of the District of Columbia denying his petition and vacating an order staying sale by the trustee, in a suit for partition.          *Reversed.*

The COURT in the opinion stated the case as follows:

The appellant, John E. Roller, appeals from a decree passed November 6, 1901, dismissing his bill of intervention in a partition suit depending in the Supreme Court of the District.

It appears from the record that on or about January 14, 1893, Allen C. Clark and wife began a suit (numbered 14,468) for partition of lots 8, 9, and 10 in square 1028. They claimed title to a portion of the same under mesne conveyances from Abraham Young, who was seized and possessed of the whole in the year 1800. There were many defendants to the bill, including persons claiming in part also under said Young, and the heirs at law of one James Ward Scott, in whom title to one-fifth is alleged. John E. Roller was also made a party defendant with the allegation that he claimed title to the whole under a pretended sale for taxes made in 1852. It was alleged that the tax sale and all proceedings therein were null and void because the requirements of the law were not complied with; and it was specially charged that there was a failure to transmit to the clerk of the circuit court of the District a report in writing, duly certified, etc., of said sale; wherefore said claim of title is a cloud upon the true title and ought to be removed, and decree therefor was prayed.

John E. Roller demurred to this bill on two grounds: First, that the bill could not be maintained as against him until title should have first been asserted in a court of law. Second, that the complainants were barred by laches.

This demurrer was sustained on June 17, 1893, and the bill dismissed as to said Roller. Complainants subsequently ordered their bill to be dismissed, having filed a new suit, numbered 15,141.

This new bill was filed November 24, 1893, and contained the same allegations substantially as the former, save that John E. Roller was not made a party and no allegation concerning his tax title was made. On January 25, 1894, Roller obtained leave to intervene, and in accordance therewith, filed an answer on February 13, 1894.

In this answer he alleged the tax sale under which he claimed as made in 1850, the payment of all taxes since said date by him and those under whom he claims, and the exercise of rights of ownership and possession for half a century, during which period witnesses have died and records have been lost, so that it would be impossible to establish all the facts thereof with certainty. He further charged unexplained laches on the part of the complainants and those under whom they claim, and finally set up the proceedings in cause No. 14,468, and the decree therein rendered, as a bar to complainants' rights.

Complainants filed a supplemental bill repeating practically the allegations of the bill in No. 14,468 concerning the illegality of the said Roller's tax title. Roller pleaded the aforesaid decree specially in reply to the foregoing.

Testimony was then taken upon the issue joined. Roller, on his own behalf, testified to his purchase of the then vacant lots, for a valuable consideration, in the fall of 1887; the payment of all taxes assessed against the same since his said purchase; that he caused the erection of a fence completely inclosing the premises, shortly after his purchase, and then leased the same to one Myers as a horse-lot in consideration of his promise to keep the fence in repair; that late in 1892, he discovered that some one had broken a part of the fence and dumped quantities of earth upon the lots, which were low; that some one else — supposed to be John H. Walter — had put up a fence whilst the litigation was pending; and that he (Roller) was certainly in actual possession when cause No. 14,468 was instituted.

William Myers testified as follows: That the lots were fenced in 1887; that witness obtained the use of them from Roller for keeping his horses thereon upon condition of keeping the fence in repair, which he did until during the year 1892; that in 1892 some contractors for adjacent excavations broke the fence and dumped some earth upon the lots, and the fencing was then gradually carried away and burned; that in the fall of 1892, a man by the name of Davis, who owned or claimed a small lot within the inclosure, fenced it and made some repairs to the general fencing; that but little of the fence remains now, the same having been from time to time taken away by parties unknown. Tax receipts were produced showing payment by Barry and his heirs from and after the alleged tax sale and title issued to him thereunder, in 1850 or 1852. Other evidence was introduced respecting the condition of the lots and their value at an early day, their gradual coming into value with the recent growth of the city, and also touching the existence of certain ancient records of the clerk's office of the old circuit court of the District; this is of no practical importance in our view of the case.

On May 5, 1896, the following decree was passed:

" This cause coming on for final hearing on the pleadings and evidence and having been heard and considered, and the court being of opinion that it has no jurisdiction to entertain this suit, as against the defendant John E. Roller, that the bill of complaint is multifarious as regards said defendant, and that the complainants are barred by their own laches from any equitable relief against said defendant, it is hereby, this 5th day of May, 1896, ordered, adjudged, and decreed that the bill of complaint be dismissed as against said defendant Roller; but it further appearing that said Roller was admitted as a defendant in this cause upon his own application and without the consent of the complainants, it is further decreed that said dismissal be without costs to said defendant.

This cause is reserved for further proceedings as between the other parties to the cause."

On May 6, 1896, a decree was passed as between the remaining parties granting the prayer for partition as prayed.

On June 30, 1896, the commissioners' report was confirmed, and Leo Simmons, Esq., was appointed trustee to make sale of certain interests, the same being incapable of partition in kind.

No action seems to have been taken under this decree until advertisement made in July, 1901, whereupon (July 26), John E. Roller, under leave previously obtained, filed a petition in intervention. Herein he alleged title in fee simple in the premises in himself since 1886, and the payment of all taxes and the exercise of ownership and possession thereafter. He also alleged the proceedings and decree in cause No. 14,468, and the proceedings and decree thereafter in No. 15,141 — the present case — and charged that when the decrees of partition and sale aforesaid were made, he was in the sole and exclusive possession of the property. That the orders for partition and sale were passed without jurisdiction and cast a cloud upon his title, etc. He prayed that the sale be stayed until final hearing, and for a decree vacating all proceedings in the said cause since the decree of May 5, 1896, and for general relief. The complainants replied denying title in Roller, denying his possession and alleging that actual possession was in Bartow L. Walker — one of the defendants — when the suit was begun, and is now in Leo Simmons, trustee. Leo Simmons, trustee, made a reply also, which, however, set up nothing new, save that sale had not been made under the decree of June 30, 1896, because of prevailing conditions of the market rendering the same undesirable, etc.

On hearing, September 9, 1901, Roller's petition was denied and the same dismissed with costs, and the order staying the sale by Simmons as trustee was vacated. From this decree Roller has appealed.

*Mr. O. B. Roller* and *Mr. D. S. Mackall* for the appellant.

*Mr. Leo Simmons* for the appellees.

*v*

Mr. Justice SHEPARD delivered the opinion of the Court:

The argument has taken a very wide range which, in our view of the manner in which the case must be disposed of for the present at least, there is no occasion to follow.

Chief among the questions that have been discussed and will be passed upon are the following:

1. To what extent, if any, the tax title under which the appellant claims may be affected by alleged irregularities in the proceedings culminating therein? 2. What effect, if any, have either the decree rendered in No. 14,468, or the earlier decree in the present proceedings, on the first intervention of appellant, as *res adjudicata* in respect of his title as against the appellees?

The titles under which the appellant and the appellees, respectively, claim are strict legal titles, and there is nothing in the allegations of the bill that can make them cognizable in equity. The conflict between them can only be adjudicated in an action at law, wherein may be completely determined, not only the question of the validity of the tax sale and title thereunder, but also the effect of the former adjudications, whatever that may be.

It is not alleged in the bill that the complainants were in the actual possession of the lands, or had even a constructive possession; and it is not yet a settled question, in this District, that, without actual possession the court has jurisdiction to entertain a bill for partition at all. *Williams* v. *Paine,* 169 U. S. 55, 80; *S. C.,* 7 App. D. C. 116, 131.

However, the difficulty of the situation extends far beyond this. The first bill filed — No. 14,468 — not only failed to allege actual possession, or an undisputed title in those among whom partition was sought, but expressly averred an adverse legal title in the appellant John E. Roller, under a tax sale which it sought to annul for irregularities.

The decree sustaining the demurrer of Roller to that bill does not show the ground of dismissal. But considering the first ground of the demurrer it is not unreasonable to

suppose that the court regarded the settlement of that title, by action at law, as a necessary pre-requisite to the partition sought as between the remaining parties to the suit. In the light of the facts as they then appeared, the dismissal could be upheld on that ground, as we shall see later.

Regarding the bill, in so far as it was aimed at the defendant Roller, as one to remove cloud from title, the dismissal might be upheld upon the ground of unexplained laches, and the failure to allege possession in the complainants. Looking at the double purpose of the bill — partition as regards one set of defendants, and removal of cloud from title as regards another wholly disconnected from them — it was clearly bad for multifariousness. *Fields* v. *Gwynn,* 19 App. D. C. 99.

But passing to the bill with which the present suit was begun — Roller, as we have seen, was not made a party defendant, but came by petition in intervention and again set up his legal title and possession thereunder. No attempt was made to controvert his proof of actual possession under claim of a legal title which has been heretofore referred to. Upon this pleading and proof, the bill was again dismissed as to Roller, the decree reciting as ground therefor that " the complainants are barred by their own laches from any equitable relief against said defendant."

Here again, treating the supplemental bill in reply to Roller's answer as one to remove cloud from title, the dismissal was clearly right.

The decree, however, should have gone farther, and that part of it retaining the bill as between the remaining parties, for partition, should have recited that it was to be retained, with suspension of further proceedings, for some reasonable time within which the complainants might establish their title at law.

" While the jurisdiction of a court of equity to decree partition, or sale for partition, is undoubted in cases where there is no serious question of the legal title as between the parties, it is equally well settled that the court does not

35

sustain a bill for partition unless the legal title be clear; and where the legal title is disputed, the court will retain the bill to give the plaintiff an opportunity to establish his title at law. This is the well-established practice. *Wilkin* v. *Wilkin,* 1 Johns. Ch. 111; *Phelps* v. *Green,* 3 Johns. Ch. 302, 305; *Coxe* v. *Smith,* 4 Johns. Ch. 271, 276." *Mudd* v. *Grinder,* 1 App. D. C. 418, 419, 420; *Walker* v. *Lyon,* 6 App. D. C. 484; *Williams* v. *Paine,* 7 App. D. C. 116, 131; *Smith* v. *Butler,* 15 App. D. C. 345, 353, 355. See also *Moore* v. *Shannon,* 6 Mackey, 157; *Agar* v. *Fairfax,* 2 L. C. Eq. (4th ed.), notes, p. 900 *et seq.;* 3 Pom. Eq. Jur., Sec. 1388; 17 Am. & Eng. Encyc. of Law, p. 709.

In *Smith* v. *Butler, supra,* whilst maintaining the general doctrine above stated, it was also held that the mere averment of an adverse title by defendant in a partition suit was not sufficient of itself to require suspension of the proceedings; but that it was within the power of the court, if not its duty, to ascertain whether in fact there exists an outstanding legal title reasonably sufficient on its face to constitute a ground of defense in an action of ejectment. That condition was unquestionably fulfilled in the case at bar by proof stronger even than the allegations of the intervenor's answer.

It is no doubt largely the fault of the appellant that the decree did not take the form indicated above as correct. He apparently made no such request or suggestion; but then, as now, sought to have his own title established as against that of the complainants in the bill. Notwithstanding the proof of possession for a term of years under the claim of a legal title by the intervenor, he had no sooner passed out of the case under the decree mentioned, than the complainants obtained the order of partition that was speedily followed by that for sale and distribution of its proceeds. Nearly five years later, when the trustee for the first time advertised the sale, the intervenor again appeared by petition alleging the validity of his title as finally established by the former adjudications in his favor, and, among other things, prayed that all orders and decrees made in the said

cause after dismissing him therefrom on May 5, 1896, be vacated.

Whether, under the conditions stated, the court had jurisdiction to pass those orders at all, or, if so, whether they should not now be vacated, are questions that we shall not undertake to answer. The first presents a serious question that was not noticed on the argument, and the second is of no practical importance.

Its attention having been again called to the condition of the title, the proper course to pursue was to suspend all proceedings and give the complainants reasonable time to establish their title at law if requested; or else to dismiss their bill without prejudice, leaving all parties to pursue such remedies for the protection of their interests as they might be advised.

One other question remains to be considered. Assuming that the court had jurisdiction to render the decrees for partition and sale, and conceding for the purposes of the argument that they may have been erroneous, it is contended, on behalf of the appellees, that, together, they constitute a final decree in the cause, which, after the term, passed beyond the power of the court to vacate. This contention is not well founded for reasons plainly stated in the following decisions of the Supreme Court of the United States: *Perkins* v. *Fourniquet,* 6 How. 206, 208; *Fourniquet* v. *Perkins,* 16 How. 82, 86; *Iowa* v. *Illinois,* 151 U. S. 238, 241.

The decision of this court, relied on by the appellees — *Schwarz* v. *Costello,* 11 App. D. C. 553 — presents an entirely different state of facts, and does not conflict, in the slightest degree, with the cases above cited.

For the reasons given, we are of the opinion that the decree appealed from should be reversed with costs, and the cause should be remanded for further proceedings not inconsistent with this opinion. It is so ordered. *Reversed.*

A motion for a rehearing was filed April 15, 1902, on behalf of the appellees, by *Mr. Henry E. Davis, Mr. Leo*

*Simmons, Messrs. Hamilton & Colbert,* and *Mr. John Rid-out.*

In support of their contention that the decree of the lower court, passed June 30, 1896, was a final decree and therefore not appealable, they cited the following cases: *Washington, etc., Company* v. *Mayor,* 7 Wall. 575; *Dean* v. *Nelson,* 7 Wall. 342; *Bank of Lewisburg* v. *Sheffey,* 140 U. S. 445; *Willard* v. *Willard,* 145 U. S. 116; *St. Louis, etc., Co.* v. *Southern Express Co.,* 108 U. S. 24; *Winthrop Co.* v. *Meeker,* 109 U. S. 180; and *Ex parte Noughton,* 108 U. S. 237.

The motion for a rehearing was denied on May 6, 1902, Mr. Justice SHEPARD delivering the opinion of the Court:

Accompanying the motion for rehearing is a stipulation of the parties with an exhibit supplying an omission of the record upon which this case was heard and determined.

As both parties have agreed that the omission was inadvertent and seem to regard the additional matter as material to all the interests involved, it has been accepted and made a part of the record for purposes of consideration and further appeal if taken. We must add, however, that the practice of suggesting defects in the transcript of the proceedings below, or in the printed record for hearing in this court, after the case shall have been decided, is not to be considered as approved by the action now taken.

It appears from this stipulation that, on May 21, 1896, John E. Roller entered an appeal from the decrees that had been entered in the cause, that he failed to perfect his appeal, and that the same was formally entered in the court below on October 18, 1898, as dismissed for want of prosecution.

The application to the clerk to enter the notice of appeal, does not specify what decrees he appealed from; but it is assumed that he meant to appeal from the two decrees that had then been entered, namely, on May 5, 1896, sustaining his demurrer and dismissing the bill as to him, and on May

6, ordering partition between the remaining parties. This action was immaterial as well as ineffectual.

Roller could not be heard on appeal from a decree in his own favor, sustaining his demurrer and dismissing the bill as to him. As a matter of fact, he relied upon this decree as one of the grounds of his second intervention, and has relied upon it throughout the hearing on appeal, as being a final adjudication of the title in his favor as against the claims of the appellees.

He was out of the case when the second decree was passed, and remained a stranger to the record until his re-entry by petition in intervention on July 26, 1901.

Whatever opinion Roller may then have had, or may now have of the nature and effect of the decree sustaining his demurrer, as indicated by the persistence of his argument throughout, is immaterial. His contentions founded thereon, as well as on the decree in the first of the cases — No. 14,468 — were passed by for reasons that have been given in the opinion heretofore delivered, and which require no further elaboration.

That the main question upon which the case was made to turn in the opinion, was not argued on the hearing is due to the persistence of the appellant, Roller, in his reliance upon the decree as a final and complete adjudication of title in his favor. It is true that he made the point as one of the grounds of his demurrer to the bill as filed in No. 14,468, but it was thereafter abandoned in favor of the preferred contention. It was not to be expected that the appellees would themselves raise the question. But it was apparent on the face of the record and, being jurisdictional in its nature, forced itself into consideration.

That, under the conditions presented by the pleadings and evidence at the time, the decree of partition was, at least, premature, is virtually conceded by the appellees. They do not deny the doctrine of the opinion, but now, as at the hearing, their contention is that the decree, whether erroneous or not, became a finality on the expiration of the term at which it was rendered. And it is apparent that

the addition sought to be made to the record is for the purpose of strengthening the foundations of that contention.

The question whether that decree was final in the sense that it passed beyond the power of the court rendering it to recall after the expiration of the term, was argued on the hearing and determined after full consideration and examination of the authorities bearing upon it.

We have found nothing in the argument now before us to require a change of the views expressed in our former opinion.

The additional decisions cited do not determine the point. They involve the finality of different decrees, as regards the rights of appeal therefrom, and are reviewed in a later case (*McGourky* v. *Railroad Co.,* 146 U. S. 536), which was carefully examined before reaching our former conclusion.

The motion for rehearing is *denied with costs.*